## Commonwealth v. Brown

C.P. of Berks County, no. CR-06-CR-0006039-2004.

*Jason Lutcavage, assistant district attorney,* for Commonwealth.

*Eric Taylor, assistant public defender,* for defendant.

BUCCI, *J.,* February 27, 2007—

## PROCEDURAL HISTORY

On May 18, 2006, a jury found the defendant, Donald Brown, guilty of robbery (two counts),[1] terroristic threats,[2] simple assault,[3] theft by unlawful taking,[4] theft

---

1. 18 Pa.C.S. §3701(a)(1)(ii), 18 Pa.C.S. §3701(a)(1)(iii).
2. 18 Pa.C.S. §2706.
3. 18 Pa.C.S. §2701(a)(3).
4. 18 Pa.C.S. §3921(a).

by deception,[5] and possession of a controlled substance.[6] He was sentenced on August 4, 2006 to an aggregate sentence of seven to 14 years incarceration. On September 1, 2006, defendant, by and through counsel, filed a post-sentence motion, challenging the weight and sufficiency of the evidence supporting his conviction on the above charges. A hearing was held addressing this motion on November 20, 2006 and on January 9, 2007, this court granted defendant a new trial. On February 7, 2007, the Commonwealth appealed this court's January 9, 2007 order. On February 9, 2007, this court ordered appellant to file a concise statement of matters complained of on appeal, pursuant to Pennsylvania Rules of Appellate Procedure §1925(b). Appellant filed a concise statement on February 14, 2007, raising the following issues:

(1) The trial court lacked the requisite authority and jurisdiction to issue its January 9, 2007 order granting the defendant's post-sentence motion for new trial where the defendant did not request any extension of time for ruling on his post-sentence motions.

(2) The trial court erred in granting the defendant's motion for new trial on the grounds of insufficiency and weight of the evidence.

The evidence, viewed in a light most favorable to the Commonwealth, shows that on October 31, 2004, Reading Police Officers David Liggett and John Carrasquillo were working undercover on a prostitution detail in the City of Reading, Berks County, Pennsylvania when they approached a man named Alex Duncan and expressed an interest in purchasing two "dime bags" of cocaine

5. 18 Pa.C.S. §3922(a)(1).
6. 35 P.S. §780-113(a)(16).

from him. N.T., jury trial, 5/18/06, at 39-42, 65-66. Mr. Duncan asked the undercover officers to follow him on foot to get the drugs. N.T., jury trial, 5/18/06, at 42. Near the corner of South 9th and Franklin Streets, Mr. Duncan encountered the defendant, Donald Brown, and they spoke briefly. N.T., jury trial, 5/18/06, at 43, 54. Then the defendant approached Officers Liggett and Carrasquillo and asked one of them to come with him. N.T., jury trial, 5/18/06, at 44.

As they walked south on 9th Street toward Franklin Street, Officer Liggett stated that "Mr. Brown placed his right hand behind his back cupped. At that time, I saw a small blue glassine packet maybe a half inch. This half inch contained a powdery white substance, which I suspected to be cocaine. He told me to give him the money, which was a $20 bill. At that time, I placed the pre-recorded $20 bill in his right hand where the drugs were and I attempted to grab the bag and he shut his fist." N.T., jury trial, 5/18/06, at 45-47.

Officer Liggett asked him where the bag was and the defendant told him to "be cool" and wait at a nearby pay phone. N.T., jury trial, 5/18/06, at 47-48. The defendant crossed Franklin Street to get into a parked car with a white male and a white female occupant. N.T., jury trial, 5/18/06, at 48, 58. At this point, Officer Liggett and Officer Carrasquillo concluded, perhaps prematurely, that they were being ripped off. As the vehicle began to pull away, Officer Carrasquillo began banging on the left rear window with his fist, demanding, "Give me my shit." N.T., jury trial, 5/18/06, at 48, 59. The defendant got out of the car with clenched fists and approached Officer Carrasquillo, who put his arm out straight in front of him to keep some space between himself and the defendant,

touching the defendant on the stomach. N.T., jury trial, 5/18/06, at 48-49. The defendant said, "Don't fucking touch me. I'll shoot you." N.T., jury trial, 5/18/06, at 49.

During this encounter, both officers repeatedly expressed their desire to consummate the drug deal and continued to demand their cocaine from the defendant. N.T., jury trial, 5/18/06, at 49. The defendant told the officers that he had "an eight ball in the car that needed to be cut up," referring to a larger amount of cocaine. N.T., jury trial, 5/18/06, at 49. Mr. Brown then attempted to re-enter the vehicle. However, Officer Carrasquillo continued to demand that the defendant "give me my shit," and the defendant responded, "I will straight up shoot you." N.T., jury trial, 5/18/06, at 50.

The defendant got into the car, which drove away. N.T., jury trial, 5/18/06, at 50. However, he was arrested a few blocks away by Reading Criminal Investigator Lackner in possession of a small blue glassine packet of cocaine and the $20 of pre-recorded buy money that Officer Liggett had given him. N.T., jury trial, 5/18/06, at 79-84; Commonwealth exhibit nos. 2-4. No weapon was found. N.T., jury trial, 5/18/06, at 85.

As discussed above, on May 18, 2006, a jury found the defendant guilty of robbery, terroristic threats, simple assault, theft by unlawful taking, theft by deception, and possession of a controlled substance and he was sentenced by this court on August 4, 2006 to seven to 14 years incarceration. On September 1, 2006, the defendant filed a timely post-sentence motion. A hearing was held addressing that motion on November 20, 2006. Unfortunately, due to this court's heavy trial schedule, we inadvertently failed to render a decision on defendant's

post-sentence motion within 120 days of the date the motion was filed as required by Pennsylvania Rules of Criminal Procedure Rule 720(B)(3). However, we strongly urge the Superior Court not to penalize the defendant for this court's inadvertence.

In his post-sentence motion, the defendant argued that the guilty verdicts for the robbery and theft convictions were against the weight and sufficiency of the evidence because the Commonwealth failed to establish that the defendant intended to take the undercover police officers' money without providing them with cocaine. Instead, the defense argues, he was merely leaving to get the drugs from another location and intended to return. After a careful review of the evidence, this court concludes that the verdict is against the weight of the evidence.

While this court does not believe that any of the Commonwealth's witnesses presented false testimony, we do believe that they misinterpreted the events that took place on the morning of October 31, 2004. The undercover officers repeatedly expressed their intent to buy drugs and the defendant appeared to have the intention of complying with their request. There was no force or threat of force used to initially obtain the money from the undercover officers and no evidence to suggest that the defendant would not have fulfilled his end of the bargain if given the opportunity to do so.

It is important to note that it was not the defendant who initiated the drug transaction, but rather it was the Reading Police who were actively seeking to purchase drugs in an undercover capacity. Furthermore, it was the police who first engaged in aggressive and belligerent behavior when they started banging on the car window

and screaming, "Give us our shit." Finally, Officer Carrasquillo first initiated physical contact by stiff arming the defendant in the stomach. Examining the totality of the circumstances, this court believes that the threats the defendant made to the undercover police officers were more likely a response to the officers' own aggressive actions then an attempted robbery, particularly since no weapon was involved.

Unfortunately, the defendant's trial counsel failed to vigorously attack the weaknesses in the Commonwealth's case or to suggest an innocent motive for the defendant's conduct. While the defendant did not raise the issue of his trial counsel's ineffectiveness, this court is concerned that he was not given the zealous representation he should have received. Additionally, the defendant was furthered denied a fair trial because he was unable to present his version of the facts to the jury.[7]

In determining whether the verdict is against the weight of the evidence, the role of the trial court is to determine whether, "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." *Commonwealth v. Widmer,* 560 Pa. 308, 320, 744 A.2d 745, 752 (2000). (citations omitted) Stated more concisely, the verdict should not be disturbed unless

---

7. The defendant was tried in absentia because he failed to appear for the second day of the jury trial. While the defendant should arguably suffer any consequences arising from his own poor judgment, in retrospect this court believes that it was too quick to proceed without the defendant. Trial could have been delayed one day without prejudice to the Commonwealth and this court should have weighed more thoroughly the potential prejudice to the defendant in proceeding without his presence against the cost to the Commonwealth of dismissing the jury and initiating new trial proceedings.

it is so contrary to the evidence as to shock one's sense of justice. *Commonwealth v. Miller,* 555 Pa. 354, 367, 724 A.2d 895, 901 (1999).

While this court is reluctant to question the verdict of a jury, we are even more reluctant to allow the defendant to spend a significant period of his life incarcerated for the alleged robbery of a mere $20 when the evidence supporting his convictions is speculative at best. Indeed, it would be manifestly unjust to do so.

The Pennsylvania Supreme Court has repeatedly emphasized: "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence." *Commonwealth v. Davidson,* 860 A.2d 575, 581-82 (Pa. Super. 2004).

"In reviewing the entire record to determine the propriety of a new trial, an appellate court must first determine whether the trial judge's reasons and factual basis can be supported. Unless there are facts and inferences of record that disclose a palpable abuse of discretion, the trial judge's reasons should prevail." *Commonwealth v. Mann,* 820 A.2d 788, 793 (Pa. Super. 2003).

"When the record adequately supports the trial court, the trial court has acted within the limits of its judicial discretion." *Commonwealth v. Forbes,* 867 A.2d 1268, 1273 (Pa. Super. 2005). "Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." *Commonwealth v. Forbes,* 867 A.2d 1268, 1273 (Pa. Super. 2005).

Here, this court did not abuse its discretion in granting defendant a new trial and, therefore, the Commonwealth's appeal should be denied and this court's order affirmed.